ARMAND LARTIGUE *v.* ELEAZAR PEET and another.

Where a contract is made for another, subject to his ratification, he will be presumed to have ratified it, unless, on being informed thereof, he immediately repudiates it.

Where a clerk, employed at a fixed salary, for a year, is discharged, without sufficient cause, before the expiration of his time, he will be entitled to recover the whole amount which would be due at the end of his term.

APPEAL from the District Court of the First District, *Buchanan*, J.

*Kennicott*, for the plaintiff.

*Grymes*, for the appellants.

MORPHY, J. The petitioner claims $607 48, as a balance of salary due to him, on the allegation, that on the 24th of October, 1839, he was engaged by the defendants as a book-keeper and general clerk for one year, at the rate of $1200 per annum, but that on the 13th of May, 1840, when the business season was nearly through, he was dismissed from his employment without any just cause or provocation, and thereby became entitled to his salary for the unexpired term of his engagement. The defence is, that the petitioner was not engaged for one year as alleged; and, moreover, that the defendants were justified in dismissing him, because the plaintiff, having been ordered by his employers to prepare a balance sheet, and being unable to make the books balance, did force a balance, and gave the sheet to the defendants without informing them of any error therein. The cause was tried by a jury. There being a verdict and judgment in favor of the petitioner, the defendants have appealed.

In relation to the time for which the plaintiff had been engaged, W. S. Morton, who acted, in the summer of 1839, as the clerk

Lartigue v. Peet and another.

and agent of the defendants, says, that when he engaged the ser-
vices of the plaintiff as a clerk, in October, 1839, the understand-
ing and agreement was, that Lartigue should remain with the de-
fendants for one year, at a salary of $1200 per annum, provided
he should suit Mr. North, one of the defendants, who was then
absent ; and that if he did not suit Mr. North, the contract was
to be annulled.   It appears, then, that the engagement was made
subject to the approval of Mr. North, not as to the amount of the
salary to be paid, or the time of its duration, but only as to the
choice made of the petitioner as a clerk.   If the latter suited Mr.
North, he was to receive $1200 a year, and to remain with the
defendants one year.   It is proved, that Morton was fully autho-
rized to make the contract; and the plaintiff remained in the em-
ployment of the defendants, receiving the above salary, long after
the arrival of North, who does not appear to have objected to the
choice made by his agent during his absence.   There is no prin-
ciple better settled, than that he, for whom a contract has been
made, subject to his ratification, is presumed to *ratify it, unless he
immediately, on being informed thereof, repudiates it.*   11 La.
286.   The plaintiff must, therefore, be considered as having been
engaged for one year from the 24th of October, 1839, at the
yearly salary of $1200.

On the second ground of defence, it is clear, that if the plain-
tiff, upon being ordered to make out a balance sheet, prepared one
with a forced balance, and delivered it to his employers, without
informing them of the errors it contained, thus undertaking to im-
pose it upon them as a true balance, such conduct would have
justified his immediate discharge, as it must have had the effect
of destroying all confidence in him, and of rendering unpleasant
and unsafe all future relations between the defendants and their
clerk.   But the evidence shows, that a balance sheet having been
prepared, by order of North, on a Saturday evening, the plaintiff,
who knew that it was incorrect, did not deliver it to his employer
for his examination, but being very busy and tired that evening,
as he stated to another clerk, placed it on the defendant's desk, in
a pigeon hole, intending to correct it the next day with the assist-
ance of one of the clerks ; that on the Monday following, he re-
quested William H. North, a brother of the defendant, North, to

assist him in discovering an error he had committed, by call-ing off the different amounts from the books, saying, that he could not make his balance sheet come out right; that while they were thus at work, North came to the desk, and asked what they were doing, and if the books did not balance. The plaintiff then told him that his balance sheet was wrong, and continued to work at the books to discover the error. He had not yet found it, when, on the following day, he was dischar-ged by North, who, before the disclosure made by the plain-tiff, was unaware of there being any mistake in the balance sheet. After plaintiff's discharge, the error was found out, and amounted to $9 20. No charge of dishonesty is made against the plaintiff, who, from the testimony, appears to have been considered by every one as an honest, faithful, and competent book-keeper, and could, therefore, have had no motive what-ever to injure, or deceive his employers. Under such circum-stances, the jury was of opinion, that the plaintiff had been discharged without a sufficient cause, and that he was entitled to the balance of his salary for the year. Their verdict is not so clearly erroneous as to authorize us to disturb it.

*Judgment affirmed.*